**UNITED STATES of America, Plaintiff,**

v.

**Tamara Jo SMITH, Defendant.**

**No. 86 CR 272–2.**

United States District Court,
N.D. Illinois, E.D.

May 20, 1987.

Anton R. Valukas, U.S. Atty. by Lawrence Rosenthal, Asst. U.S. Atty., for plaintiff.

Thomas S. Moore, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

█ Tamara Jo Smith ("Defendant") has appealed her conviction on multiple counts of conspiracy and fraud. The Seventh Circuit has partially remanded the case with an order that we rule on Defendant's challenge to the validity of her indictment. The indictment's validity is, of course, of paramount importance. Without an indictment, this court would be without jurisdiction. *See* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on ... indictment of a Grand Jury"); Fed.R. Crim.P. 7(a) ("an offense which may be punished by imprisonment for a term exceeding one year ... shall be prosecuted by indictment, or if indictment is waived, it may be prosecuted by information.").[1]

---

1. The government takes the position that because a defendant can waive indictment, it must follow that an indictment is not a jurisdictional prerequisite. *See* gov't. br. at 11–14. Because we decide this case on narrower grounds, we need not and do not address this argument.

Defendant was indicted by the Special October 1984 Grand Jury (hereinafter the "special grand jury"). The original indictment was returned in April 1986, and a superseding indictment with only minor changes was returned on May 13, 1986. Defendant pleaded not guilty to the superseding indictment and proceeded to trial with one co-defendant, her twin sister Tanya Smith.

Both indictments were returned by the special grand jury after its initial term of eighteen months had been completed in March 1986. In fact, some sixty indictments involving substantially more than one hundred defendants were returned by that same grand jury after that time.

The question before us is whether the special grand jury was extended at the conclusion of its initial term. Defendant takes the position that the special grand jury was not extended at the end of its initial term in March 1986 and, accordingly, that grand jury ceased to exist and was without power to return indictments after that time. Defendant's position is based upon the absence of an order by the district court extending the term of the special grand jury in March 1986.

A review of the facts reveals that on September 10, 1984, then acting Chief Judge Prentice Marshall entered an order pursuant to 18 U.S.C. § 3332(b) directing that a special grand jury be convened in October 1984. Toward the end of March 1986, when its initial term was ending, the special grand jury voted to extend its term because its business had not been completed.[2] Thereafter, a motion dated March 25, 1986, and a draft order were prepared by the U.S. Attorney's office for submission to former Chief Judge McGarr. That order provided: "It is hereby ordered that the Special October 1984 Grand Jury be extended until further order of this Court." How-

ever, apparently due to an oversight, the order was never signed by Judge McGarr nor was it ever presented to him. The transcripts of proceedings before Judge McGarr disclose that the special grand jury did not appear before him at any time from March 18 until April 1, 1986.

However, on April 1 and nearly weekly thereafter, the special grand jury returned indictments and conducted other business in open court. The transcripts of those appearances reflect that indictments were returned on April 1 and almost every week thereafter until the end of May.[3] Those transcripts further reflect that upon the conclusion of the grand jury's appearances before him, Judge McGarr consistently ordered the special grand jury to "continue your deliberations." The record shows that Judge McGarr, upon motion of the U.S. Attorney's office, replaced members of the special grand jury by written order in April, May and June 1986.

■ The grand jury continued its work until February 1987 when it was discharged. On March 3, 1987, Judge McGarr entered a *nunc pro tunc* order extending the special grand jury as of March 1986. In that order, Judge McGarr stated that in March of 1986 he had intended to, and in fact did, extend the special grand jury's term and that no formal order could be found memorializing his action. Defendant, in this court, has sought discovery concerning the facts surrounding the entry of the *nunc pro tunc* order and the events of March 1986. Defendant's discovery requests include proposed interrogatories for Judge McGarr and proposed depositions of all the members of the special grand jury. In view of the lack of factual support for that order as outlined above and in light of Judge Shadur's opinion in *United States v. Lytle,* 658 F.Supp. 1321 (N.D.Ill.1987), we will assume that the *nunc pro tunc* order

---

2. No minutes or transcript of such a vote are routinely made by the grand jury. However, on February 24, 1987, the members of the special grand jury were reconvened and asked as a group if they recalled a vote to extend in March 1986. Everyone who had been a member of the special grand jury in March 1986 remembered voting to extend. (Transcript of Grand Jury Special Session, Feb. 24, 1987, Ex. 7 to Government's Brief).

3. The official file also shows indictments returned once in June, every week in July and approximately 3 weeks out of every month during the remainder of 1986.

can do nothing more than demonstrate that Judge McGarr intended to extend the grand jury's term in March 1986. It cannot act as a substitute for an extension order never entered. *See, e.g., Recile v. Ward,* 496 F.2d 675, 680 (5th Cir.1974), *modified on other grounds,* 503 F.2d 1374 (5th Cir.1974); *Lytle,* at 1326. Since we rely on that order only to determine Judge McGarr's intentions, not his actions, we deny Defendant's motion for discovery relating to its entry. *See Wax v. Motley,* 510 F.2d 318 (2d Cir.1975).

■ In determining whether a formal order was required to extend the special grand jury in March 1986, we turn, as we must, to the language of the statute governing the convening of the special grand jury and the length of its term of service, 18 U.S.C. § 3331. That statute provides in pertinent part:

(a) ... The grand jury shall serve for a term of eighteen months unless an order for its discharge is entered earlier by the court upon a determination of the grand jury by majority vote that its business has been completed. If, at the end of such term or any extension thereof, the district court determines the business of the grand jury has not been completed, the court may enter an order extending such term for an additional period of six months. No special grand jury term so extended shall exceed thirty-six months, except as provided in subsection (e) of section 3333 of this chapter.

(b) If a district court within any judicial circuit fails to extend the term of a special grand jury or enters an order for the discharge of such grand jury before such grand jury determines that it has completed its business, the grand jury, upon the affirmative vote of a majority of its members, may apply to the chief judge of the circuit for an order for the continuance of the term of the grand jury. Upon the making of such an application by the grand jury, the term thereof shall continue until the entry upon such application by the chief judge of the circuit of an appropriate order. No special grand jury term so extended shall exceed thirty-six months, except as provided in subsection (e) of section 3333 of this chapter.

Thus, the operative language governing extensions of the grand jury's term provides that "[i]f, at the end of [the] term ..., the district court determines the business of the grand jury has not been completed, the court may enter an order extending such term for an additional period of six months." We read that sentence to require, for jurisdictional purposes, that the district court make a determination at the end of the special grand jury's term that the business of the grand jury has not been completed. It is this determination by the court that establishes the legitimacy of the grand jury and thus empowers it to continue its work. If the district court makes a determination that the business of the grand jury has not been completed, the statute then authorizes an extension. If such a determination cannot be made, then an extension would be unauthorized. Accordingly, in extending the special grand jury's term, what is important for purposes of the court's jurisdiction is the *determination* made by the court, not a formal order memorializing that determination or a formal order actually extending the term of service of the grand jury.

Our reading of the statute is supported by other language in § 3331. For example, § 3331(a) provides for the early discharge of the special grand jury as well as for the extension of its term; however, unlike the language governing extensions, the statutory language governing discharges clearly *mandates* the entry of a judicial order: "The grand jury shall serve for a term of eighteen months *unless* an order for its discharge is entered earlier by the court upon a determination of the grand jury by majority vote that its business has been completed." (emphasis added). It is important to note that in discharging a special grand jury, the grand jury determines for itself that its business has been completed; thus, a judicial order ratifying this determination is required. In extending the special grand jury's term, by contrast, the court must make *its own* determination that the business of the grand jury has not

been completed. Since it is the court's own determination upon which any order would rest, the order is only a reflection of the judicial determination already made by the court, not the judicial action itself.

The language of § 3331(b) contains a similar dichotomy, providing that "[i]f a district court within any judicial circuit fails to extend the term of a special grand jury or enters an order for the discharge of such grand jury before such grand jury determines that it has completed its business ...", then the special grand jury may appeal to the chief judge of the circuit. As in § 3331(a), the statute expressly refers to the entry of an order with respect to a discharge of the grand jury; however, no reference to an order appears at all with respect to an extension—e.g., the statute does not read "if a district court ... fails to enter an order extending the term of a special grand jury ...", then the grand jury may appeal. Further, the statute specifically provides that during the appellate process the grand jury may continue its work—an extension of its term in the absence of a district court order. Thus, this subsection appears also to support our interpretation that the entry of a formal order to extend the term is not required to retain power in the special grand jury, as the subsection seems to contemplate situations in which no such order will be entered. The failure of the district court to enter a formal order extending the special grand jury's term of service does not render the indictments returned by that grand jury after March 1986 void.

Our reading is consistent with the legislative history of § 3331. The section was enacted as one small part of the Organized Crime Control Act of 1970, and was, like several other of the Act's provisions, designed to provide law enforcement authorities with more effective tools in the fight against organized crime. *See* Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922 (1970) (Statement of findings and purpose). Title I of the Act, of which § 3331 is a part, was designed to enhance the powers of grand juries investigating organized crime by ensuring that a sufficient number of grand juries would be available to accommodate the needs of the particular district, by permitting the special grand juries to serve for longer periods, and by giving them a greater degree of autonomy from the courts. *See generally* 116 Cong.Rec. 36,293 (1970); 116 Cong.Rec. 35,290, 35,311–35,321 (1970). *See also* H.R. Rep. No. 1549, 91st Cong., 2d Sess. 39, *reprinted in* 1970 *U.S.Code Cong. & Admin.News* 4007, 4014; S.Rep. No. 617, 91st Cong., 1st Sess. 47–51. While the House version of § 3331 (the version eventually enacted) amended the Senate version to retain *some* control by the district court over the special grand juries, *see* H.R.Rep. 1549, 91st Cong., 2d Sess. 32, *reprinted in* 1970 *U.S.Code Cong. & Admin.News* 4007, 4007, it is evident from the debates in the House that a major concern of the drafters was that grand juries be protected against arbitrary termination of their term of service by district courts. Thus, as explained by Congressman Poff of Virginia:

> These special grand juries will meet at least once in every 18–month period. They will ordinarily serve for an 18–month term, *subject to extension as necessary for the completion of their business so long as the total time served does not exceed 36 months.*
>
> Because it has been deemed advisable to give the special grand juries, whose function it is to inquire into sensitive organized crime activities, a degree of autonomy beyond that enjoyed by grand juries generally, the bill provides that when a district court fails to extend a grand jury's term upon its request or discharges it before it has completed its business, the district judge's decision may be appealed to the chief judge of the circuit court by the grand jury upon a majority vote of its members. The special grand jury will continue to sit pending review of the district court's action. *The provision will assure against the dismissal of a special grand jury conducting an organized crime investigation prior to the completion of its work.*
>
> · · · · ·
>
> These provisions carry out several important recommendations of the Presi-

dent's Commission on Law Enforcement and the Administration of Justice. The Commission recommended that at least one investigative grand jury be impaneled annually in each jurisdiction that has major organized crime activity, *and that the grand jury's term be extended whenever it can show that its business remains unfinished at the end of a normal term.* The Commission also suggested that judicial dismissal of grand juries with unfinished business should be appealable to a higher court, and that provision should be made for suspension of the dismissal pending the appeal, since the possibility of arbitrary termination of a grand jury by a supervisory judge would constitute a danger to successful completion of an investigation.

116 Cong.Rec. 35,290 (emphasis added).

The legislative history plainly indicates that § 3331 was enacted to permit the convening of special grand juries which would have significant independent authority to determine the length of their service without interference from the courts. In light of the protections provided these special grand juries against *intentional* actions taken by the district court to terminate their service before their business has been completed, we conclude that it would be contrary to the spirit as well as the letter of the statute to hold invalid all the indictments returned by the special grand jury after March 1986 because of an *inadvertent omission* by the district court. Nothing in the legislative history even hints that any provision of § 3331 was designed to protect the individuals investigated by these special grand juries. *Cf. United States v. Pisani*, 590 F.Supp. 1326, 1339 (S.D.N.Y.1984). In fact, the entire purpose of the statute is to permit the special grand jury sufficient time to complete their investigations of complex matters. We can find no evidence whatsoever in the legislative history that Congress was attempting to legislate the validity of indictments in § 3331. *Cf. United States v. Wallace & Tiernan, Inc.*, 349 F.2d 222, 227 (D.C.Cir. 1965); *Nolan v. United States*, 163 F.2d 768, 769 (8th Cir.1947), *cert. denied*, 333

U.S. 846, 68 S.Ct. 649, 92 L.Ed. 1130 (1948); *Breese v. United States*, 203 F. 824, 828 (4th Cir.1913).

Finally, the case law interpreting provisions analogous to § 3331 supports our view that § 3331 does not make the entry of a formal order a jurisdictional prerequisite. It is true that in certain instances, courts have upheld challenges to the court's jurisdiction on the ground that the indictments had been returned by grand juries whose terms had expired, *see, e.g., United States v. Armored Transport, Inc.*, 629 F.2d 1313, 1316 (9th Cir.1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981); *United States v. Macklin*, 523 F.2d 193, 195 (2d Cir.1975); *United States v. Fein*, 504 F.2d 1170, 1173 (2d Cir.1974); however, in each of these cases, the indictments were returned by grand juries whose terms had exceeded the maximum duration authorized by law. *See, e.g., Macklin*, 523 F.2d at 195 (under Rule 6(g), which then provided for a maximum term of 18 months, "[a]n *unauthorized* extension of the term of a grand jury beyond 18 months is a defect which 'goes to the very existence of the grand jury itself.'" (emphasis added)); *Fein*, 504 F.2d at 1177 ("an indictment returned by a grand jury sitting *beyond its legally authorized time* is a nullity" (emphasis added)).

The case before us presents a situation materially different from that presented in *Armored Transport, Macklin* and *Fein*. The Special October 1984 Grand Jury returned the indictment in question well within its statutorily authorized life of 36 months. Other courts to have considered indictments returned by grand juries under similar circumstances have upheld the validity of those indictments, even in the face of procedural defects, where the intent of the court could be clearly ascertained. *See, e.g., Shimon v. United States*, 352 F.2d 449 (D.C.Cir.1965); *United States v. Marrapese*, 610 F.Supp. 991 (D.R.I.1985). *See also Nolan v. United States*, 163 F.2d 768 (8th Cir.1947) (failure of judge to sign order required by statute to summon venire not fatal to indictments returned by grand jury drawn from that venire), *cert. denied*,

333 U.S. 846, 68 S.Ct. 649, 92 L.Ed. 1130 (1948); *Breese v. United States*, 203 F. 824 (4th Cir.1913) (where intent of judge to summon venire is clear, failure to enter order as required by statute does not affect validity of indictments returned).[4]

We conclude that as long as the district court determined at the end of the term that the Special October 1984 Grand Jury's business was not completed, then the court did all that was required lawfully to extend the term of service of that special grand jury. The order would have done nothing more than provide evidence that the requisite determination had been made and that the special grand jury's term accordingly had been extended.

■ The indisputable facts before us clearly demonstrate that former Chief Judge McGarr determined that the jury should be extended to complete its work. The special grand jury voted in March 1986 to continue its work and, pursuant to that determination, continued its regular weekly appearances before Judge McGarr to transact its business. Judge McGarr continued to accept its indictments and by order to replace some of its members. After each such appearance, Judge McGarr told the special grand jury to continue its work. These facts, together with the statement in the *nunc pro tunc* order setting forth Judge McGarr's intention to extend the term of the grand jury, clearly reflect the court's determination that the business of the special grand jury had not been completed. Such a determination, even in the absence of a formal order extending the special grand jury, is sufficient to validate Defendant's indictment.[5]

■ We acknowledge that the statute envisions the entry of an order by the district court, and in the ordinary course of business, it would be prudent for the district court to enter such an order. We conclude, however, that while the failure to enter such an order might be deemed a "defect" in the procedures employed in this case, it is not a *jurisdictional* defect that would render the indictments void and render the district court without authority to hear the ensuing cases. The error, if one occurred, was ministerial. *See Breese v. United States*, 226 U.S. 1, 11, 33 S.Ct. 1, 3, 57 L.Ed. 97 (1912) ("no indictment presented by a grand jury shall be deemed insufficient nor the trial, judgment or other proceeding thereon be affected by any defect in matter of form only, which shall not tend to the prejudice of the Defendant. As we already have intimated, this indictment was presented in fact by the grand jury, and the defect, if any, was a defect in the matter of form only.").

■ Accordingly, we believe, at this posture of the case—long after pretrial motions, trial, and sentencing, Defendant has waived her right to contest the absence of an order extending the term of the grand

---

**4.** To the extent that *United States v. Johnson*, 123 F.2d 111 (7th Cir.1941), *rev'd*, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943) retains validity in this circuit, that case is not inconsistent with our analysis. The court in *Johnson* did hold invalid certain actions taken by the grand jury; however, its reason was not, as Defendant argues, that the grand jury had exceeded its term, but rather that the extension order conferred power on the grand jury not authorized by the applicable statute.

**5.** Further, Judge McGarr's direction to the special grand jury "to resume your deliberations" constitutes an order—an order given to the special grand jury repeatedly in April and May 1986. Orders of the district court need not be reduced to writing in order to make them effective, nor need they necessarily track the language of a statute in order to effect a desired result thereunder. *See Nolan v. United States*, 163 F.2d 768, 769 (8th Cir.1947), *cert. denied*, 333 U.S. 846, 68 S.Ct. 649, 92 L.Ed. 1130 (1948). Judge McGarr did not, in so many words, order that the special grand jury "be extended for an additional period of six months." He did, however, order it at the conclusion of each meeting with him to continue its work. Such an oral direction has the intent and effect of continuing the special grand jury's work under the auspices of the district court. The absence of a written order or oral direction by a court precisely providing that the special grand jury "be extended for an additional period of six months" is not required under our reading of § 3331 and its absence does not render Defendant's indictment void. Thus, we conclude that the term of the special grand jury was in fact extended and, accordingly, the Defendant's indictment was valid.

jury. Fed.R.Crim.P. 12 provides in pertinent part as follows:

> (b) **Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:
>
> (1) Defenses and objections based on defects in the institution of the prosecution; or
>
> (2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings);
>
> . . . . .
>
> (c) **Motion Date.** Unless otherwise provided by local rule, the court may, at the time of the arraignment or as soon thereafter as practicable, set a time for the making of pretrial motions or requests and, if required, a later date of hearing.
>
> . . . . .
>
> (f) **Effect of Failure to Raise Defenses or Objections.** Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Rule 12(b)(1) specifically provides that all objections and defenses based upon defects in the institution of the prosecution must be raised prior to trial. In this case, institution of the prosecution occurred by action of the special grand jury, and thus, under Rule 12(b)(1), Defendant's objection based on the absence of an order extending the term of the grand jury must have been

made by pretrial motion. Indeed, even if Defendant's challenge is treated as a defect in the indictment itself, Rule 12(b)(2) provides that such objections must be raised before trial unless those objections rest on the indictment's failure to show jurisdiction or to charge an offense. Defendant's indictment clearly shows jurisdiction—violations of federal wire and mail fraud statutes and conspiracy to violate those statutes. Further, the Defendant's indictment charged all the necessary elements constituting each offense. Defendant's objections to her indictment are directed against the extension of the grand jury which indicted her, not against the failure of the indictment to show jurisdiction or to state an offense.

In short, under either Rule 12(b)(1) or 12(b)(2), Defendant was required to raise her objection to the absence of an order prior to trial. *See, e.g., Shotwell Manufacturing Co. v. United States,* 371 U.S. 341, 361–62, 83 S.Ct. 448, 460–61, 9 L.Ed.2d 357 (1963) (challenge that grand jury illegally constituted rejected as waived); *Scales v. United States,* 367 U.S. 203, 259, 81 S.Ct. 1469, 1501, 6 L.Ed.2d 782 (1961) (challenge to method of choosing grand jurors waived for failure to comply with Rule 12); *United States v. Ponder,* 444 F.2d 816, 821 (5th Cir.1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972); *United States v. Wilson,* 434 F.2d 494, 496 (D.C. Cir.1970).[6] Thus, Defendant has waived her challenge to the defect in the institution of the prosecution.

 Under Rule 12(f), the court may grant relief from a waiver for cause shown. Such cause must be shown even when a challenge to the indictment rests on constitutional grounds. *See Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). Defendant cannot establish cause for her failure to raise her objection before trial. Under Rule 1.04(e) of the criminal rules of this district court,

---

6. Defendant's failure to raise her objection prior to trial distinguishes her case from *United States v. Johnson,* 123 F.2d 111 (7th Cir.1941), *rev'd,* 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943) and *United States v. Patterson,* No. 86 CR 847, mem. op. (N.D.Ill. Feb. 4, 1987) [Available on WESTLAW, DCT database], in both of which the defendant raised his challenge to the indictment in pretrial motions.

orders extending the period of service of grand juries are public records available to defendants prior to trial. An examination of the public record reveals that the March 25, 1986 order purporting to extend the special grand jury was unsigned by any district court judge. The file further reveals multiple indictments returned, including Defendant's indictment, after March 25, 1986. Given the public file which disclosed the absence of a signed order extending the special grand jury's term, Defendant cannot show cause for failing to raise that issue prior to trial.

For all the foregoing reasons, we find that Defendant's indictment was valid and Defendant has waived her right to object to any defects arising out of the failure of the district court to enter an order an extending the term of the special grand jury in March 1986.

Accordingly, we conclude that Defendant's challenge to the validity of her indictment is without merit.